**Michael HANNAN et al.**

v.

**ALLTEL PUBLISHING CO.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 8, 2008 Session.

Oct. 31, 2008.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the Appellant, Alltel Publishing Company.

J. Lewis Kinnard, Madisonville, Tennessee, for the Appellees, Michael Hannan and Elizabeth Hannan.

Richard L. Burnette, Sevierville, Tennessee, for the Amicus Curiae, Tennessee Association for Justice.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which WILLIAM M. BARKER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., dissenting.

The defendant failed to print the plaintiffs' advertisement and business listings in a telephone directory. The plaintiffs filed suit against the defendant claiming loss of profits and other damages as a result of the omission. The defendant moved for summary judgment alleging the plaintiffs

were unable to prove they were damaged. The trial court granted the defendant's motion for summary judgment. The Court of Appeals held that the defendant failed to negate an essential element of the plaintiffs' claim and reversed the trial court's judgment. We affirm the Court of Appeals' decision and remand to the trial court.

## I. Facts and Procedural History

The plaintiffs, Michael and Elizabeth Hannan ("the Hannans"), owned and operated two businesses in Tellico Plains, Tennessee—Tellico Plains Realty and Magnolia House Bed and Breakfast. The Hannans advertised these businesses in telephone directories published by the defendant, Alltel Publishing Co. ("Alltel"). From November 2001 through November 2004, the Hannans placed a quarter-page advertisement containing information for both businesses in the yellow pages directory. In November 2003, however, the yellow pages directory was published without the Hannans' quarter-page advertisement. In addition, Alltel omitted Tellico Plains Realty from the November 2003 white pages directory and failed to list Tellico Plains Realty under the "Real Estate" heading of the yellow pages directory. The yellow pages directory did contain a listing for Tellico Plains Realty under the "Real Estate Consultants" heading. Alltel included listings for the Magnolia House Bed and Breakfast in both the white and yellow pages.

The Hannans contacted Alltel about the missing yellow pages advertisement and the omitted white and yellow pages directory listings, and Alltel informed them that a supplement to the directories would be published. Alltel published the directory supplement with the previously omitted listings in the white pages for Tellico Plains Realty and in the yellow pages under the heading of "Real Estate." The supplement, however, did not include the Hannans' quarter-page yellow pages advertisement. To compensate the Hannans for the omission, Alltel printed the Hannans quarter-page yellow pages advertisement the following year at no charge.

The Hannans filed suit against Alltel, claiming that as a result of the omissions from the November 2003 directory:

> Plaintiffs have lost business and have been unable to expose their business to the public and many of their associates have assumed they have left the business and departed from the Tellico Plains area. Plaintiffs have suffered a dramatic loss of business and have suffered much economic loss and emotional distress so that they have been forced to leave the real estate and bed and breakfast business.
>
> . . .
>
> [The Defendant's] failure to provide the advertising purchased by the Plaintiffs and particularly their failure to include Plaintiffs [sic] name in the regular white and yellow pages of the directory amounts to actionable negligence and provides a cause of action for recovery . . . .

The Hannans sought damages in the amount of $225,000.

Alltel filed a motion for summary judgment claiming that the Hannans "are unable to prove they suffered any damages as a result of Alltel's alleged breach of contract." Alltel pointed to the Hannans' tax returns from the years 2001 through 2004 to show that the Hannans' gross income increased from $42,138 in 2003, a year in which the directories contained the advertisement and listings for nearly the entire year, to $69,355 in 2004, the calendar year in which the advertisement was omitted from the yellow pages directory for a period of eleven months.

In addition, Alltel relied upon the Hannans' deposition testimony as evidence that the Hannans would be unable to prove they sustained damages as a result of the omitted advertisement. This testimony concerned the Hannans' increased gross income in 2004 and their inability to quantify their damages. Specifically, Alltel relies on the following deposition testimony from Michael Hannan:

Q Would you agree with me that your gross receipts were up significantly in the year that your business was not listed as compared to the previous year when you were listed?

A That our gross sales were—

Q Significantly higher in the year that you weren't listed as compared to the year you were listed?

A If you are asking me to compare those two lines, yes.

Q And you told me you cannot give an explanation for that?

A Other than the fact that we may have sold a piece of our own property, I don't know. We may have had to start to liquidate by then.[1]

Alltel also relied on the following testimony from Elizabeth Hannan:

Q Your husband responded to my questions about quantifying in dollars the amount of loss or documentation which would reflect the amount of loss for these omissions that we're here about. Do you have any way of doing that?

A I have absolutely no way of doing that. And neither does anyone else.

In addition to the motion for summary judgment, Alltel filed a Statement of Material Facts Not in Dispute. Alltel contended that the following material issues were not in dispute: in November 2003, the Hannans paid Alltel to publish an advertisement in the local phone directory; the advertisement was not placed in the initial directory although the business listing was included under the heading "Real Estate Consultants" in the directory; the advertisement was placed in a supplement to the 2003 telephone directory;[2] the Hannans placed advertisements in the phone directory in 2001, 2002, and 2004; and the Hannans' gross income for each of the years 2001 through 2004 was $87,703, $55,645, $42,138, and $69,355, respectively. The Hannans' response to the motion for summary judgment stated that the Hannans agreed with Alltel's statement of the material facts not in dispute and that the Hannans would establish damages by proof at trial. The trial court granted

---

1. Alltel also relied on the following deposition testimony from Michael Hannan:

Q Do you know why or do you have an explanation for why in the year preceding the failure to list you had such a low net profit of only $2,000, $1,949?

A I still can't tell you. I couldn't tell you earlier; I can't tell you now. I don't know how this stuff works. I presume, it's possible that we could have paid a debt or something; I don't know. We could have lowered the amount of money we owed on a piece of land for instance. I don't know the answer.

Alltel relies on this exchange to show that the Hannans cannot prove the amount of damages sustained as a result of the omitted advertisement. Michael Hannan's inability to explain the low *net profit* occurring the year prior to the omission is only marginally relevant, however, to the amount of income that would have resulted from the advertisement because, in addition to gross income, net profit reflects the Hannans' expenses for that year, which would be unrelated to the advertisement.

2. According to deposition testimony and copies of the supplemental directory attached to Alltel's motion for summary judgment, the advertisement was not placed in the supplemental directory. Rather, only the missing directory listings were placed in the supplemental directory.

Alltel's motion for summary judgment. On appeal, the Court of Appeals reversed, finding that Alltel failed to negate an essential element of the Hannans' claim. We granted Alltel's application for permission to appeal.

## II. Analysis

 Summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). In *Byrd*, this Court set out the basic principles involved in determining whether a motion for summary judgment should be granted. The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense. *Id.* at 215 n. 5. If the moving party does not satisfy its initial burden of production, the court should dismiss the motion for summary judgment. *See id.* at 215. Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists. *Id.* at 210–11.

In *Byrd*, we stated that the Tennessee and federal rules for summary judgment were "virtually identical," and thus federal cases provided "helpful guidance" in our interpretation of Tenn. R. Civ. P. 56. *Id.*

at 211 & n. 2. These statements have led to some confusion among Tennessee courts as to the proof required for the moving party to meet its burden of production. Although we stated that interpretations of both rules are "consistent in *most* material respects," this Court also stated that "conclusory assertion[s]" were not sufficient to shift the burden to the nonmoving party. *Id.* at 214, 215 (emphasis added).

In the seminal case governing federal summary judgment procedure, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the plurality opinion held that a moving party may shift the burden of production to a nonmoving party by alleging that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. The Sixth Circuit, for example, has read *Celotex* to allow the moving party to merely challenge the nonmoving party to "put up or shut up" on a critical issue to shift the burden of production. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). The moving party shifts the burden of production simply by "asserting that the opposing party will not be able to produce sufficient evidence at trial." *Id.* Then, if the nonmoving party cannot "put up" the evidence needed to show a material fact is in dispute, summary judgment will be granted. *Id.* Decisions within the federal circuits vary, but most seem either to follow the "put up or shut up" approach or to require the moving party merely to point to deficiencies in the nonmoving party's evidence. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000); *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998); *Russ v. Int'l Paper Co.*, 943 F.2d 589, 592 (5th Cir.1991); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 394–95 (7th Cir.

1990); *Kauffman v. P.R. Tel. Co.*, 841 F.2d 1169, 1172–73 (1st Cir.1988).

■ This Court did not adopt a "put up or shut up" approach to burden-shifting in *Byrd* or in subsequent cases. Citing to Justice Brennan's dissenting opinion in *Celotex*, we held that the moving party must either conclusively establish an affirmative defense or "affirmatively negate an essential element of the nonmoving party's claim" to shift the burden of production to the nonmoving party. *Byrd*, 847 S.W.2d at 215 n. 5; *see also Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).

Although in *Byrd* we cited to Justice Brennan's dissenting opinion in *Celotex*, the two opinions differ in some important respects. Justice Brennan's dissent offers the moving party two possible methods of shifting the burden to the nonmoving party: (1) "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548. In *Byrd*, we adopted Justice Brennan's first method of shifting the burden of production, permitting the moving party to submit affirmative evidence that negates an essential element of the nonmoving party's claim. We did not adopt Justice Brennan's second method of burden-shifting. In its stead, we permitted a moving party to shift its burden by establishing "an affirmative defense." *Byrd*, 847 S.W.2d at 215 n. 5. Justice Brennan's dissenting opinion does not discuss the use of an affirmative defense as a possible option for the moving party to satisfy its burden of production. *See Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).

*Byrd* defines an affirmative defense as "i.e., a defendant would be entitled to summary judgment if he demonstrated that the nonmoving party cannot establish an essential element of his case." *Byrd*, 847 S.W.2d at 215 n. 5. Clearly, this characterization of "affirmative defense" conflicts with its most commonly understood definition: "In pleading, [a] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it." Black's Law Dictionary 60 (6th ed.1990); *see also* Tenn. R. Civ. P. 8.03 (describing "affirmative defenses" such as accord and satisfaction, arbitration and award, express assumption of risk, comparative fault, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, and workers' compensation immunity); Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping about Summary Judgment in Tennessee*, 69 Tenn. L.Rev. 175, 190 (2001) (noting that *Byrd's* definition of affirmative defense "yoked together two disparate means of carrying the movant's burden").

This characterization of "affirmative defense" has caused understandable confusion. In later cases, this Court has cited to *Byrd* as providing the moving party only two methods for shifting its burden: (1) the moving party may affirmatively negate an essential element of the nonmoving party's claim; or (2) the moving party may establish an affirmative defense. *See Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn.2004); *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn.2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998). In these cases, we have not been called upon to discuss *Byrd's* definition of "affirmative defense." *See Blair*, 130 S.W.3d at 768; *Staples*, 15 S.W.3d at 88; *McCarley*, 960

S.W.2d at 588. We now acknowledge that this Court in *Byrd* misused the term "affirmative defense" in describing a different, yet valid, method of burden-shifting.[3] Thus, a moving party may shift the burden of production to the nonmoving party by showing that the nonmoving party cannot establish an essential element of the claim at trial.

This second method of shifting the burden of production outlined in the *Byrd* opinion also differs significantly from Justice Brennan's second method of burden-shifting. The opinion in *Byrd* requires a moving party to demonstrate that the nonmoving party *cannot establish* an essential element of the claim at trial. *Byrd*, 847 S.W.2d at 215 n. 5. Justice Brennan, however, would give the moving party the easier burden of demonstrating that the nonmoving party's *evidence*—at the summary judgment stage—is *insufficient* to establish an essential element. *See Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). Therefore, the standard we adopted in *Byrd* clearly differs from Justice Brennan's standard and poses a heavier burden for the moving party.

Our discussion shows that in *Byrd*, despite language suggesting the contrary, we began our departure from the federal standard and continued that departure in *McCarley*, and in subsequent cases. One commentator agrees and has noted that "the *Byrd* court set Tennessee on a path that appears to have spared us the dubious practices spawned by *Celotex*. . . . The *Byrd* decision, and especially the *McCar-*

*ley* court's insistence on the analytical framework enunciated in *Byrd*, has provided a reasonable, predictable summary judgment jurisprudence for our state."[4] Cornett, *supra* note 3, at 220.

In *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, this Court reaffirmed the burden-shifting principles announced in *Byrd* and reversed the summary judgment when the moving party supported its motion with only the allegation that the nonmoving party could not prove an essential element of its case at trial. In that case, the plaintiff filed suit against the defendant restaurant for negligence in serving undercooked chicken that resulted in food poisoning. The restaurant moved for summary judgment, identifying evidence in the record that showed the plaintiff's food poisoning could have been caused by bacon eaten earlier that day. The plaintiff had tested neither the bacon nor the chicken for bacteria, and the plaintiff's doctor was unable to pinpoint the cause of the food poisoning. The restaurant's motion asserted that the plaintiff would be unable to prove causation at trial and therefore summary judgment was appropriate. The trial court granted summary judgment. On appeal, this Court held that although the restaurant "cause[d] doubt" as to the causation of the plaintiff's illness, it failed to negate an essential element of the plaintiff's claim. *Id.* Therefore, the trial court prematurely considered the sufficiency of the nonmoving party's evidence when the moving party failed to shift its burden of production.

---

3. Noting the curious use of the term "affirmative defense" in *Byrd*, Professor Cornett observes that an affirmative defense is "a traditional way for the defendant to defeat the plaintiff's claim by carrying its own burden of proof." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping about Summary Judgment in Tennessee*, 69 Tenn. L Rev. 175, 189–90, 208 (2001).

4. The dissent's quotation of this language conspicuously omits the commentator's reference to this Court's "insistence [in *McCarley*] on the analytical framework enunciated in *Byrd*" as providing "a reasonable, predicable summary judgment jurisprudence in this state." Cornett, *supra*, note 3, at 220.

In *Blair v. W. Town Mall*, 130 S.W.3d 761, the defendant moved for summary judgment in a slip-and-fall case, alleging that the plaintiff did not establish a prima facie case of negligence. In support of the motion, the defendant offered the plaintiff's deposition testimony that she did not know how long the slippery substance had been present on the parking lot or whether the defendant knew of its presence. We acknowledged that this evidence cast doubt on whether the plaintiff could offer proof at trial to show the defendant had notice of the dangerous condition. The deposition testimony, however, did not affirmatively negate an essential element of the plaintiff's claim because the evidence did not show that the defendant lacked notice of the dangerous condition. *Id.* at 768. Thus, the defendant failed to shift the burden of production to the plaintiff, and the trial court improperly granted the summary judgment motion. *Id.*[5]

This Court has reaffirmed these burden-shifting principles when faced with a moving party's conclusory allegations. In *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn.1998), the defendant physician moved for summary judgment and supported her motion with an affidavit that stated simply that she provided acceptable medical treatment and did not violate the standard of care. We reversed the summary judgment because this conclusory affidavit in support of her motion failed to negate an essential element of the plaintiff's claim or establish an affirmative defense. *Id.* In *Staples v. CBL & Associates, Inc.*, 15 S.W.3d at 88, we affirmed that "[t]o properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense."

These cases clearly show that a moving party's burden of production in Tennessee differs from the federal burden. It is not enough for the moving party to challenge the nonmoving party to "put up or shut up" or even to cast doubt on a party's ability to prove an element at trial. Nor has our Court ever followed the standard put forth by Justice Koch in his dissent, that the moving party may simply show that the nonmoving party "lacks evidence to prove an essential element of its claim." *See Blair*, 130 S.W.3d at 768; *Staples*, 15 S.W.3d at 88; *McCarley*, 960 S.W.2d at 588. This standard is identical to Justice Brennan's standard, which we rejected in *Byrd. Byrd*, 847 S.W.2d at 215 n. 5; *see Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).

In summary, in Tennessee, a moving party who seeks to shift the burden of

---

5. In addition to the cases cited, several Court of Appeals cases have found that the moving party *successfully* negated an essential element of the nonmoving party's claim. *See Hinson v. Claiborne & Hughes Health Ctr.*, No. M2006–02306–COA–R3–CV, 2008 WL 544662, *5–6 (Tenn.Ct.App. Feb.26, 2008) (holding that expert opinion that the physician did not cause an injury negated the causation element of plaintiff's medical malpractice claim); *Burnette v. Estate of Guider*, No. E2006–01164–COA–R3–CV, 2007 WL 4548292, *4 (Tenn.Ct.App. Dec.27, 2007) (holding that a claim for actual agency was negated by the purported principal's affidavit that no agency relationship existed); *McPherson v. Shea Ear Clinic*, No. W2006–01936–COA–R3–CV, 2007 WL 1237718, *6 (Tenn.Ct.App. Apr.27, 2007) (holding that defendant's affidavit that no contract existed negated the plaintiff's third party beneficiary claim); *Lawson ex rel. Lawson v. Edgewater Hotels, Inc.*, 167 S.W.3d 816, 821–22 (Tenn.Ct.App.2004) (holding that the defendant successfully negated the plaintiff's claim that the hotel pool was over-chlorinated by providing records that showed an employee checked chlorine levels on the day in question and recorded the proper level of chlorine).

production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.[6]

Justice Koch asserts in his dissent that our opinion today "brushes aside fifteen years of post-*Byrd v. Hall* precedent," but he cites only to Court of Appeals cases that purport to follow his desired approach. To the contrary, we are upholding over ten years of Tennessee Supreme Court precedent, beginning with this Court's reiteration of the *Byrd* principles in *McCarley* and continuing in *Blanchard, Staples,* and *Blair. See also Doe ex rel. Doe v. Roman Catholic Diocese of Nashville,* 154 S.W.3d 22, 41 (2005); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn.1997). Our decision today is true to *McCarley* through *Blair.* It is Justice Koch's view that, if adopted, effectively would overturn ten years of post-*Byrd* precedent.

Justice Koch also asserts that imposing a less stringent standard on the moving party is necessary to keep Tennessee's growing caseload under control and to conserve judicial resources. Justice Koch cites to statistics showing that the number of cases filed every year has increased since the 1960s. These studies, however, focus on state courts generally, and some of the studies are more than twenty years old. With regard to Tennessee specifically, Justice Koch states that "Tennessee is no exception, with a clearance rate below one hundred percent in 2005."[7] The dissent fails to note, however, that the clearance rate of civil cases in Tennessee has hovered between 93% and 100% over the last eight years[8] during which the summary judgment standard refined in *McCarley* has been the rule. The most recently available data shows that in fiscal year 2006–2007, Tennessee chancery and circuit courts had clearance rates of 96% and 97% respectively.[9] Further, according to the study cited by Justice Koch in his dissent, Tennessee ranked last among the states in civil filings per capita with 1,275

---

6. These are the two burden-shifting methods available to the moving party when the moving party does not bear the burden of proof at trial. The burden-shifting analysis differs, however, if the party bearing the burden at trial is the moving party. For example, a plaintiff who files a motion for partial summary judgment on an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law. Similarly, a defendant asserting an affirmative defense, such as laches, shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense.

7. A "clearance rate" is a percentage computed by comparing the number of cases filed in a certain year with the number of case dispositions within that year. The number of case filings and the number of case dispositions, however, may or may not be related to the same cases within a certain year. In other

words, a case may be filed in one fiscal year and disposed of within the next fiscal year. Nonetheless, this percentage indicates whether the courts have a backlog of cases at the end of any particular fiscal year. Ideally, courts would always have a clearance rate of 100%.

8. Annual Report of the Tennessee Judiciary, Fiscal Year 2006–2007 Statistics, at 21, *available at* http://www.tsc.state.tn.us/geninfo/ Publications/AnnualReport/20 06–2007/2006– 07% 20annual% 20report% 20statistics.pdf. The clearance ratings were derived from the number of filings and dispositions reported in the annual report for both the chancery and circuit courts.

9. In fiscal year 2005–2006, the year Justice Koch notes that Tennessee courts had less than a 100% clearance rate, the chancery and circuit courts had a 97% and 98% clearance rate respectively. See Annual Report of the Tennessee Judiciary, *supra* note 8, at 21.

cases filed per 100,000 citizens.[10] So it appears Tennessee *is* an exception. The citizens of Tennessee tend to be less litigious than other U.S. citizens, and our trial courts have done an excellent job in keeping pace with the number of filings every year. While we agree that summary judgment should be utilized to weed out frivolous claims, there is no evidence that the burden-shifting structure put in place by *Byrd* and further refined in *McCarley* through *Blair* does not already do so.

■ In this case, the Hannans have alleged that Alltel was negligent in failing to print the advertisements. Alltel, on the other hand, characterizes the Hannans' claim as a breach of contract claim rather than a negligence claim. At this stage, we have not been called upon to determine this issue, and we leave such determination to the trial court upon remand.[11] What is clear, however, is that the Hannans must be able to prove that they were damaged. The *existence* of damages cannot be uncertain, speculative, or remote. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn.Ct. App.1999) (discussing damages in tort law); *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn.Ct.App.1983) (discussing damages for breach of contract). The *amount* of damages may be uncertain, however, if the plaintiff lays a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages. *Overstreet*, 4 S.W.3d at 703; *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct.App.1987) (discussing damages for breach of contract); *Cummins*, 667 S.W.2d at 765. Thus, no recovery is available for loss of profits when it is uncertain whether any profits would have been made. *See Harris*, 741 S.W.2d at 335.

■ Alltel contends that summary judgment is appropriate because the Hannans cannot prove within a reasonable degree of certainty that they suffered damages. They base this assertion on: (1) the Hannans' tax returns showing an increase in gross income during the year the advertisement was omitted and Mr. Hannan's deposition testimony that he could not explain the increase in gross income; and (2) Mrs. Hannan's deposition testimony that neither she nor anyone else could determine the amount of damages sustained as a result of the omission. Thus, Alltel relies only upon evidence from the Hannans in support of its motion for summary judgment. Summary judgment may be appropriate for the moving party who relies upon evidence from the nonmoving party, but only if that evidence affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. The moving party may not, however, merely point to omissions in the nonmoving party's proof and allege that the nonmoving party cannot prove the element at trial. *See Blair*, 130 S.W.3d at 768.

The complaint and the deposition testimony of both of the Hannans consistently allege the *existence* of damages. What is clear from the deposition testimony is that neither party can quantify the *amount* of damages. The relevant question then is whether this failure to quantify the amount of damages is sufficient to show affirma-

---

10. *Examining the Work of State Courts, 2006: A National Perspective from the Court Statistics Project* 28 (Robert C. LaFountain et al., eds., National Center for State Courts 2007) *available at* http://www. ncsconline.org/D_Research/csp/2006_files/EWSC-2007WholeDocument.pdf. The next least litigious state was Hawaii with 2,003 filings per 100,000 citizens.

11. We note, however, that we have never recognized a tort of "negligent breach of contract."

tively that the Hannans cannot provide proof sufficient to allow the trier of fact to make a fair and reasonable assessment of the damages. *See Harris*, 741 S.W.2d at 336. The assertion of damages in a specific amount, however, is not required. At trial, the Hannans must provide a foundation that would allow a fair and reasonable assessment of damages, and neither party has indicated that this foundation cannot be provided. Rather, taken as a whole, the Hannans state only that there is no way to quantify in dollars, nor is there documentation of, the precise amount of damages sustained as a result of the omission. Therefore, the deposition testimony does not negate an essential element of the Hannans' claim, nor does it show that the Hannans cannot prove the existence of damages at trial.

The Hannans agree that the material issues of fact are as stated by Alltel. The Hannans do not agree, however, with the inferences drawn from those facts. Alltel contends that it is impossible to assess the existence of damages based upon the Hannans' tax returns, which show an increase in profits during the year the advertisement was omitted from the directory. While Alltel is correct that the Hannans' tax returns do not prove damages, the tax returns do not disprove the existence of damages, nor do they foreclose the possibility that the Hannans will be able to prove the existence of damages at trial. Therefore, Alltel's reliance on the Hannans' tax returns does not negate an essential element of the Hannans' claim and does little more than cast doubt as to whether the Hannans lost income.[12] In fact, Alltel only asserts that the Hannans could not use the tax returns to prove damages. This clearly falls short of meeting the moving party's burden of production in Tennessee.

### III. Conclusion

Because Alltel failed to negate an essential element of the Hannans' claim or show that the Hannans could not prove an essential element of their claim at trial, the burden never shifted to the Hannans to show that they could prove damages. Therefore, summary judgment was inappropriate. The judgment of the Court of Appeals is affirmed. Costs on appeal are taxed to the appellant, Alltel Publishing Co., for which execution may issue if necessary.

WILLIAM C. KOCH, JR., J., dissenting.

WILLIAM C. KOCH, JR., J., dissenting.

The Court's decision in this case alters summary judgment practice in Tennessee by dramatically changing the moving party's burden of production. From henceforth, parties seeking a summary judgment in Tennessee's courts will no longer be able to shift the burden of production to the nonmoving party by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element

---

12. In addition, Alltel's argument is based on a faulty premise. Alltel assumes that all of the gross sales in 2004 resulted from a period during which the directories contained no advertising. This assumption ignores the realities of the real estate business—a property listed for sale may not realize profits until a much later date. For example, a property listed for sale in October 2003, when advertising was included in the directories, may not be sold until January 2004. The proceeds from that sale would be included in the 2004 federal income tax return, although it was the 2003 advertising that was responsible for attracting the seller who listed the property with the Hannans. In short, the link between the Hannans' tax year and the effect of the advertisement or lack thereof is tenuous at best.

of a claim or defense asserted by the non-moving party. This change in direction goes far beyond what is required to determine whether the summary judgment in this case was or was not appropriate. The Court's decision will undermine, rather than enhance, the utility of summary judgment proceedings as opportunities to weed out frivolous lawsuits and to avoid the time and expense of unnecessary trials.

## I.

Summary judgments were used extensively in England and in several states before they became a part of the Federal Rules of Civil Procedure in 1937.[1] From the earliest days of their introduction into American jurisprudence, the purpose of summary judgments was to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for [a] trial."[2] As Judge Joseph Hutcheson noted almost seventy years ago,

> [s]ummary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists.

*Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir.1940).

Tennessee was not one of the states with a summary judgment procedure when Fed. R.Civ.P. 56 was adopted,[3] and it did not rush to adopt one before it had an opportunity to examine how summary judgments were being used in other federal and state courts. Summary judgments, as we know them today, did not become part of the procedure in Tennessee's courts until the Tennessee Rules of Civil Procedure became effective on January 1, 1970. At that time, the advent of Tenn. R. Civ. P. 56 was hailed as "one of the most important and desirable additions to Tennessee procedure contained in the Rules of Civil Procedure." Tenn. R. Civ. P. 56 cmt.; *see also* Donald W. Pemberton, *Tennessee Rules of Civil Procedure,* 4 Mem. St. U.L.Rev. 211, 215 (1974). Another acknowledged expert on the procedure in Tennessee's courts explained that

> The philosophy of summary judgment is to avoid a needless trial in a case where, although the pleadings may indicate disputes over factual issues, facts outside the pleadings if known would clearly show that there is "no genuine issue as to any material fact."

Donald F. Paine, *Recent Developments in Tennessee Procedure: The New Tennessee Rules of Civil Procedure,* 37 Tenn. L.Rev. 501, 516 (1970).

This Court's decisions in the years following the adoption of the rule reflect that our understanding of the purpose and application of Tenn. R. Civ. P. 56 mirrored the federal courts' application of Fed.

---

1. 12A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice and Procedure* 474–75 advisory committee's note to 1937 adoption of Fed.R.Civ.P. 56, app. C (2008) (*"Federal Practice and Procedure"*).

2. 12A *Federal Practice and Procedure* 477 advisory committee's note to 1963 Amendment to Fed.R.Civ.P. 56(e), app. C.

3. This Court, characterizing Tenn. R. Civ. P. 56 as "probably the most far-reaching departure from the past," observed that prior to the adoption of the rule, summary judgments were confined to summary remedies against certain public officials. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* 483 S.W.2d 719, 719 (Tenn.1972).

R.Civ.P. 56. We noted that summary judgments provided a quick, inexpensive way to conclude cases when there exists no dispute regarding the material facts. *Bowman v. Henard,* 547 S.W.2d 527, 529 (Tenn.1977); *EVCO Corp. v. Ross,* 528 S.W.2d 20, 24–25 (Tenn.1975). We also noted that summary judgments were not substitutes for trials of disputed factual issues. *Layhew v. Dixon,* 527 S.W.2d 739, 742 (Tenn.1975). However, we cautioned that summary judgments "go to the merits of the litigation" and, therefore, that a nonmoving party facing a summary judgment should "neither ignore it nor treat it lightly." *Fowler v. Happy Goodman Family,* 575 S.W.2d 496, 498 (Tenn.1978). Rather, when a motion for summary judgment is properly made and supported, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

In 1986, the United States Supreme Court handed down three opinions that refined summary judgment practice in the federal courts.[4] These cases signaled to the lower federal courts that summary judgments could be relied upon, more than they had been in the past, to weed out frivolous lawsuits and to avoid the time and expense of unnecessary trials.[5] Among other things, these opinions clarified the issues surrounding the burden of production and the burden of persuasion under Fed.R.Civ.P. 56.

In particular, the Court's decision in *Celotex Corporation v. Catrett* outlined the standards to be applied when determining whether the moving party has met its summary judgment burden. The defendant in the *Celotex* case supported its summary judgment motion with nothing other than an assertion that the plaintiff had failed to produce any evidence that the defendant's product had caused the plaintiff's injuries. The United States Circuit Court for the District of Columbia reversed the summary judgment after concluding that the summary judgment motion was "fatally defective" because the defendant had "made no effort to adduce *any* evidence, in the form of affidavits or otherwise, to support its motion." *Catrett v. Johns–Manville Sales Corp.,* 756 F.2d 181, 184 (D.C.Cir. 1985).

The United States Supreme Court reversed. Although the Court issued a five-to-four decision, the majority and the dissent agreed regarding how the burden of production and the burden of persuasion in summary judgment proceedings should operate. The justices' disagreement was limited to the application of their agreed-upon principles to the facts of the *Celotex* case. Justice Rehnquist, writing for the majority, stated that there was "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548. To the contrary, he pointed out that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-

---

4. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

5. 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 468 (3d ed.1998).

moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. 2548.

Justice White supplied the fifth vote for reversal. He stated in his concurring opinion that "[i]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case. . . . It is the defendant's task to negate, if he can, the claimed basis for the suit." *Celotex Corp. v. Catrett*, 477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring). Despite the fact that Celotex Corporation's summary judgment motion was only supported by its assertion that Ms. Catrett had no evidence to prove her case, Justice White concurred in reversing and remanding the case to the circuit court to address the adequacy of Ms. Catrett's response to Celotex Corporation's motion. *Celotex Corp. v. Catrett*, 477 U.S. at 328–29, 106 S.Ct. 2548 (White, J., concurring).[6]

Justice Brennan used his dissenting opinion in *Celotex Corporation v. Catrett* to focus on how and when the burden of production shifted in a summary judgment proceeding. In cases where the burden of proof at trial would be on the nonmoving party, he stated that the moving party could carry its burden of production either by submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or by demonstrating to the trial court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. at 331, 106 S.Ct. 2548. Justice Brennan also explained that the moving party

> must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

*Celotex Corp. v. Catrett*, 477 U.S. at 332, 106 S.Ct. 2548. Once a moving party has carried its burden with regard to the sufficiency of the nonmoving party's evidence, Justice Brennan pointed out that the burden of production shifted to the nonmoving party (1) to point to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) to rehabilitate the evidence attacked by the moving party, (3) to produce additional evidence showing the existence of a genuine issue for trial, or (4) to submit an affidavit explaining why further discovery is necessary. *Celotex Corp. v. Catrett*, 477 U.S. at 332–33 & n. 3, 106 S.Ct. 2548.

Many of Tennessee's trial courts and the Court of Appeals began citing and relying on *Celotex Corporation v. Catrett* soon after it was filed.[7] However, differences

---

6. Some commentators assert that Justice White's concurring opinion is "inconsistent" with Justice Rehnquist's plurality opinion. *See, e.g.*, June F. Entman, *Flawed Activism: The Tennessee Supreme Court's Advisory Opinions on Joint Tort Liability and Summary Judgment*, 24 Mem. St. U.L.Rev. 193, 217 (1994) ("Entman"). Other commentators, however, have noted that Justice White's decision could have been based on the fact that Ms. Catrett had failed to respond to Celotex

Corporation's interrogatories seeking information about her evidence of causation. Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L.Rev. 175, 185 n. 66 (2001) ("Cornett").

7. In *Moman v. Walden*, 719 S.W.2d 531, 533 (Tenn.Ct.App.1986), the Court of Appeals held that "[u]nder Rule 56.03, upon motion, summary judgment shall be entered against a

among the three sections of the Court of Appeals began to emerge. *Compare Moman v. Walden*, 719 S.W.2d 531 (Tenn.Ct. App.1986), *and Kilpatrick v. Bryant*, Shelby Eq. No. 3, 1990 WL 165790 (Tenn.Ct. App. Nov.1,1990),[8] *with Thurman–Bryant Elec. Supply Co. v. Unisys Corp.*, No. 03A01–9105–CV–00152, 1991 WL 222256 (Tenn.Ct.App. Nov.4, 1991), *perm. app. denied concurring in results only*, (Tenn. Mar. 25, 1992).[9]

When this Court became aware of the conflicting Court of Appeals opinions regarding the application of *Celotex Corporation v. Catrett* to Tenn. R. Civ. P. 56, we granted an appeal to address the issue. We took the case, not out of a concern that the trial and appellate courts were granting too many summary judgments, but rather because we were convinced that summary judgments were helpful devices, when used appropriately, to resolve disputes in a just, speedy, and inexpensive manner. *EVCO Corp. v. Ross*, 528 S.W.2d at 24–25.[10]

The case the Court selected involved the claim of a hospital employee who had been discharged as the head of the Scott County Hospital's radiology department that two physicians had maliciously interfered with his employment. *Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn.1993). The defendant physicians filed a summary judgment motion after the plaintiff failed to answer their interrogatories seeking to discover the identity of all persons having knowledge of his claims. The physicians did not support their motion with affidavits, and the plaintiff filed an opposing affidavit on the day that the summary judgment motion was heard. The trial court granted a summary judgment, and the Court of Appeals affirmed after concluding that the plaintiff's failure to respond to the physicians' interrogatories required "the ultimate conclusion that there is no evidence to support [the plaintiff's] complaint." *Byrd v. Hall*, No. 03A01–9104–CV–00116, 1991 WL 169180, at *1 (Tenn.Ct.App. Sept.5, 1991). This Court reversed the summary judgment because the plaintiff's eleventh-hour affidavit opposing the summary judgment motion created genuine issues of material fact. *Byrd v. Hall*, 847 S.W.2d at 217.

The significance of *Byrd v. Hall* is that the Court explicitly "embraced" the views of Justices Rehnquist, White, and Brennan in *Celotex Corporation v. Catrett* regarding the burden of production and the bur-

party who failed to make a showing sufficient to establish the existence of an essential element to that party's case and on which the party will bear the burden of proof at trial. If the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."

8. This Court affirmed the summary judgment in part in *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn.1993).

9. This Court initially filed an order on March 16, 1992, denying the application for permission to appeal without comment. However, we filed a revised order on March 25, 1992, stating that we did "not concur with some of the language found in the Court of Appeals opinion dealing with *Celotex Corporation v. Catrett.*"

10. If anything, the Court was concerned that the courts were being too hesitant to grant summary judgments in appropriate cases. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 9–4(c), at 9–55 (2d ed.2004); Lawrence W. Morton, Note, *Summary Judgment*, 9 Mem St. U.L.Rev. 481, 481 (1979) (noting that Tenn. R. Civ. P. 56 "has received a less than enthusiastic reception in much of the judiciary, particularly at the appellate level"); Buckner Wellford, Celotex, *Summary Judgment and the Tennessee Supreme Court: Waiting for the Other Shoe to Drop*, Tenn. B.J., July–Aug.1992, at 22, 24.

den of persuasion in summary judgment proceedings. *Byrd v. Hall*, 847 S.W.2d at 214. The Court approved both burden-shifting methods identified by Justice Brennan as permissible ways for the moving party to carry its burden of production in a summary judgment proceeding.

With regard to the first burden-shifting method, we stated that the moving party could carry its burden by "affirmatively negat[ing] an essential element of the non-moving party's claim." *Byrd v. Hall*, 847 S.W.2d at 215 n. 5. With regard to the second burden-shifting method, we stated that a moving party "would be entitled to summary judgment if he [or she] demonstrated that the nonmoving party cannot establish an essential element of his [or her] case." *Byrd v. Hall*, 847 S.W.2d at 215 n. 5. We explained that a "summary judgment is appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish any essential element of its case on which it will have the burden of proof at trial." *Byrd v. Hall*, 847 S.W.2d at 213. We reenforced this point when we stated that granting a summary judgment is appropriate if, after sufficient time for discovery has elapsed, the non-moving party is unable to demonstrate that he or she can present sufficient evidence at trial to withstand a motion for directed verdict. *Byrd v. Hall*, 847 S.W.2d at 213.[11]

While our decision in *Byrd v. Hall* has not escaped criticism,[12] it has also been credited with providing "a firm foundation for a stable summary judgment practice" that "may well have spared Tennessee some of the problems that have been noted in federal practice." Cornett, 69 Tenn. L.Rev. at 176. While this Court has not again explicitly repeated its endorsement of the ability of a moving party to satisfy its burden of production by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim or defense, the trial courts and the Court of Appeals have repeatedly interpreted Tenn. R. Civ. P. 56 to permit moving parties to do precisely that. *See, e.g., Holt v. Pyles*, No. M2005–02092–COA–R3–CV, 2007 WL 1217264, at *8 (Tenn.Ct.App. Apr.24, 2007), *perm. app. denied* (Tenn. Sept. 17, 2007); *Denton v. Hahn*, No. M2003–00342–COA–R3–CV, 2004 WL 2083711, at *11 (Tenn. Ct.App. Sept.16, 2004) (No Tenn. R.App. P. 11 application filed); *Cagle v. Gaylord Entm't Co.*, No. M2002–00230–COA–R3–CV, 2002 WL 31728866, at *3 (Tenn.Ct. App. Dec.5, 2002), *perm. app. denied* (Tenn. June 30, 2003); *Wilson v. Rubin*, 104 S.W.3d 39, 47 (Tenn.Ct.App.2002); *Fleck v. Cooper Realty Mgmt. Co.*, 84 S.W.3d 600, 602 (Tenn.Ct.App.2002); *Blair v. Allied Maintenance Corp.*, 756 S.W.2d 267, 270 (Tenn.Ct.App.1988); *Moman v. Walden*, 719 S.W.2d at 533.

While this Court has issued a number of opinions narrowly construing *Byrd v. Hall*,[13] it has not, at least until today,

---

11. Despite the fact that we explicitly "embraced" Justice Brennan' second method of shifting the burden of production in *Byrd v. Hall*, the Court now states that "[w]e did not adopt Justice Brennan's second method of burden-shifting." While this cramped reading of *Byrd v. Hall* is consistent with the results that the Court desires to reach in this case, it is entirely inconsistent with not only the language of *Byrd v. Hall* but also the subsequent interpretation of *Byrd v. Hall* by Tennessee's courts.

12. Cornett, 69 Tenn. L.Rev. at 180–93; Entman, 24 Mem. St. U.L.Rev. at 206–26.

13. These decisions have relied on the ambiguous language in footnote 5 of *Byrd v. Hall* stating that a moving party could carry its burden of production by "affirmatively ne-

expressly repudiated the plain language in *Byrd v. Hall* embracing Justice Brennan's second burden-shifting method. Thus, trial and appellate courts have continued to employ Justice Brennan's second burden-shifting method. Many of the intermediate appellate court opinions were officially reported after this Court denied permission to appeal. Accordingly, under Tenn. Sup.Ct. R. 4(G)(2), these decisions became "controlling authority for all purposes." These cases are controlling authority no longer.

## II.

The Court's decision in this case brushes aside fifteen years of post-*Byrd v. Hall* decisions relying on *Byrd v. Hall's* version of Justice Brennan's second burden-shifting method. Parties seeking a summary judgment will no longer be able to shift the burden of production to the nonmoving party by demonstrating that the nonmoving party's evidence is insufficient, as a matter of law, to establish an essential element of one of the nonmoving party's claims or defenses. Now, parties seeking a summary judgment will be able to shift the burden of production only when they (1) establish an affirmative defense as a

matter of law or (2) demonstrate that the nonmoving party cannot establish an essential element of a claim or defense for which it will have the burden of proof at trial.

Such a dramatic change in established summary judgment practice prompts several questions. The foremost question is why does the Court now believe this change as necessary? Is *Celotex Corp. v. Catrett*, as construed by *Byrd v. Hall*, bad law? Are summary judgments no longer needed to weed out frivolous lawsuits and to avoid the time and expense of unnecessary trials? Are properly made and supported summary judgment motions somehow interfering with the litigants' constitutionally protected right to a jury trial? [14] Does the Court now believe that summary judgments inappropriately favor one side in litigation more than another? The Court's opinion provides few answers.

There can be little doubt that litigation has increased since the 1960s. While many keen observers of American courts deny that this phenomenon is symptomatic of exaggerated litigiousness, unfettered and excessive awards, or fundamental

gat[ing] an essential element of the nonmoving party's claim" rather than the clear language elsewhere in *Byrd v. Hall* stating that a "summary judgment is appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish any essential element of its case on which it will have the burden of proof at trial." *Byrd v. Hall*, 847 S.W.2d at 213. *See, e.g. Doe 1 ex rel. Doe 1*, 154 S.W.3d 22, 41 (Tenn.2005); *Blair v. West Town Mall*, 130 S.W.3d 761, 767 (Tenn.2004); *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1997).

**14.** This question must certainly be answered in the negative. *State v. Malady*, 952 S.W.2d 440, 443 (Tenn.Crim.App.1996); *Union Plant-*

ers *Nat'l Bank of Memphis v. Inman*, 588 S.W.2d 757, 760 (Tenn.Ct.App.1979); *see also Martin v. Norfolk Southern Ry.*, No. E2006–01021–COA–R3–CV, 2007 WL 1958644, at * 8 (Tenn.Ct.App. July 6, 2007) (Susano, J., dissenting) (observing that it is a "bedrock principle" that "a party's jury demand and its right to pursue its alleged cause of action can be legitimately thwarted if the party sued can demonstrate, under the rubric of Tenn. R. Civ. P. 56, that it is entitled to summary judgment. Hence, if the material facts pertaining to a defense are not in dispute and if those facts show conclusively that the defendant is entitled to a judgment, the plaintiff loses its constitutional right to a jury trial, its case is over, and the defendant goes away with summary judgment"), *perm. app. granted* (Tenn. Nov. 13, 2007).

problems with substantive law,[15] they agree that the caseload has grown.[16] The National Center for State Courts found that all incoming cases in state trial courts (defined as newly filed, reopened, and reactivated cases) rose in 2005, exceeding 100 million for the second time in ten years.[17] Between 1984 and 1993, civil and criminal caseloads in state courts increased by thirty percent, outstripping the eight percent increase in population.[18] A report by the Rand Corporation's Institute for Civil Justice found that nationwide, tort litigation showed a growth of three percent between 1981 and 1984 but that higher-stakes torts such as malpractice and product liability were growing quickly and that mass latent injury torts "tend to explode in number." [19]

Increases in the caseload lead to delay [20] and threaten to sap already scarce judicial resources.[21] In *Examining the Work of*

15. Marc Galanter, *The Turn Against Law: The Recoil Against Expanding Accountability*, 81 Tex. L.Rev. 285, 298 n. 79, 301 (2002) (rejecting the portrayal of a world of "ubiquitous litigation, outlandish claims, and excessive awards" advanced by the media and such "canonical antilitigation texts" as Walter K. Olson's *The Litigation Explosion* (1991)). *See also* Deborah R. Hensler et al., Rand Inst. for Civil Justice, *Trends in Tort Litigation*, at 24 (1987).

16. Marc Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, 1 J. Empirical Legal Stud. 459, 485 (2004) *available at* http:// marcgalanter.net/Documents/papers/ thevanishingtrial.pdf (noting the number of filings in the federal courts has increased fivefold from 1962 to 2002); Marc S. Galanter, *Reading the Landscape of Disputes: What We Know and Don't Know (And Think We Know) About our Allegedly Contentious and Litigious Society*, 31 UCLA L.Rev. 4, 37 (1983) (finding large increase in federal filings and an increase in per capita filings); Marc Galanter, *Beyond the Litigation Panic*, 37 Proceedings of the Acad. of Political Sci. 18, 18, 19 (1988) *available at* http://marcgalanter.net/ Documents/beyondthelitigationpanic.pdf (stating that "[p]er-capita rates of filing civil cases have risen in most localities in recent decades" but concluding that the data for the years 1978–1984 "portray nothing that resembles the supposed explosion"); Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding Our Day in Court and Jury Trial Commitments?*, 78 N.Y.U. L.Rev. 982, 994–95 (2003) (noting that "some evidence indicates that the volume of litigation has increased" but arguing that there is no increase in the proportion of lawsuits to injuries). *See also* Galanter, 81 Tex. L.Rev. at

287 (noting that the proportion of lawyers in the population increased around 1970 and more than doubled by the end of the century).

17. *Examining the Work of State Courts, 2006: A National Perspective from the Court Statistics Project* 21 (Robert C. LaFountain et al., eds., National Center for State Courts 2007) *available at* http://www. ncsconline.org/D_Research/csp/2006_files/EWSC–2007WholeDocument.pdf.

18. Neal Kauder, *National State Court Caseload Trends, 1984–1993*, Caseload Highlights (Nat'l Ctr. for State Courts, Williamsburg, Va.), Aug. 1995, at 1, *available at* http://www. ncsconline.org/d_research/CSP/Highlights/vol 1no1.pdf.

19. Hensler, *Trends in Tort Litigation*, at 6, 30 (explaining the discrepancy in numbers used by opponents and proponents of the tort reform debate by demonstrating discordant trends in subcategories of tort suits).

20. On delay, *see generally*, Barry Mahoney, *Changing Times in Trial Courts* 210–11 (National Center for State Courts 1988) *available at* http://www.nesonline.org (concluding that "in a number of courts a high percentage of cases take longer ... than the maximum time periods set forth in either the standards adopted by the American Bar Association or those endorsed by the Conference of Civil Justice"); Benjamin R. Civiletti, *Zeroing in on the Real Litigation Crisis: Irrational Justice, Needless Delays, Excessive Costs*, 46 Md. L.Rev. 40, 44–46 (1986).

21. *See* Kauder, *National State Court Caseload Trends, 1984–1993*, at 1 (noting that in 1993, state courts of general jurisdiction heard 85

*State Courts, 2006,* the National Center for State Courts noted that "with numbers of this magnitude, the drain on state court resources should not be underestimated." [22] The Center also found that "the number of trial judges and courtrooms has not kept pace with increases in filings." [23]

Tennessee is no exception, with a clearance rate below one hundred percent in 2005.[24] It is true that "[s]low justice is bad, but speedy injustice is not an admissible substitute." [25] However, summary judgments, by performing the essential task of weeding out meritless claims,[26] strive to accomplish the twin goals of justice and celerity. As one commentator noted, the *Celotex* decision "fostered the value of procedural efficiency, reduced the danger of harassment of defendants, and reduced the possibility of a jury's perversion of the substantive/procedural balance by means of improper and unauthorized wealth redistribution." [27] Given the rise in litigation and the concomitant demand on state judicial resources, it is essential to maintain the courts' ability to dispose of meritless litigation.

The Court's decision prompts a second question. What practical effect will this decision have on litigation in Tennessee's courts? The answer is that its effects will be significant and far-reaching. It will provide another safe harbor for those who are unprepared. In cases in which expert evidence is necessary to prove an essential element of a plaintiff's claim, such as medical malpractice cases,[28] defendants will no

times as many criminal and 27 times as many civil cases as federal district courts, while operating with only 14 times as many judges).

22. *Examining the Work of State Courts, 2006,* at 21. *See also* David B. Rottman, *Trends and Issues in the State Courts: Challenges and Achievements, in The Book of the States* 236 (The Council of State Governments 2004) (finding that "the overall demand for access to state judges' time remains strong and likely to increase").

23. Paula Hannaford–Agor et al., *Trial Trends and Implications for the Civil Justice System,* Caseload Highlights (Nat'l Ctr. for State Courts, Williamsburg, Va.), June 2005, at 5, *available at* http://www.ncsconline.org/d—research/CSP/Highlights/Vol11No3.pdf (explaining the decline in both bench and jury trials by pointing to such institutional limitations, in addition to case flow management techniques and ADR). *See also* Rottman, *Trends and Issues in the State Courts,* at 239 (noting that the "flood tide" of new and varied demands "challenges the institutional capacity of the state courts").

24. *Examining the Work of State Courts, 2006,* at 30 (noting that "[i]f a state is unable to dispose of as many cases as are incoming, [its] clearance rate will be below 100 percent, [its] pending caseload is likely to grow, and an increase in [its] backlog may also result"). The report also found that in 2005, there were 1,924 incoming non-traffic cases per judge in this state. *Examining the Work of State Courts, 2006,* at 22.

25. Mahoney *Changing Times in Trial Courts,* at 205 (quoting Maurice Rosenberg, *Court Congestion: Status, Causes, and Remedies, in The Courts, the Public and the Law Explosion* 56 (Harry W. Jones, ed.1965)).

26. Miller, 78 N.Y.U.L.Rev. at 1016.

27. Martin H. Redish, *Summary Judgment and the Vanishing Trial: Implications of the Litigation Matrix,* 57 Stan. L.Rev. 1329, 1348 (2005).

28. Summary judgments are regularly and frequently granted when the courts determine that the plaintiff's expert does not meet the requirements of Tenn.Code Ann. § 29–26–115(b) (Supp.2008). *See, e.g., Eckler v. Allen,* 231 S.W.3d 379, 387 (Tenn.Ct.App.2006); *Kenyon v. Handal,* 122 S.W.3d 743, 765–66 (Tenn.Ct.App.2003); *Totty v. Thompson,* 121 S.W.3d 676, 681–82 (Tenn.Ct.App.2003); *Roberts v. Bicknell,* 73 S.W.3d 106, 115 (Tenn.Ct.App.2001); *Dunham v. Stones River Hosp., Inc.,* 40 S.W.3d 47, 52 (Tenn.Ct.App.2000); *Mabon v. Jackson–Madison County Gen. Hosp.,* 968 S.W.2d 826, 831 (Tenn.Ct.App. 1997); *Rose v. H. C.A. Health Servs. of Tenn., Inc.,* 947 S.W.2d 144, 149 (Tenn.Ct.App.

longer be entitled to a summary judgment when they demonstrate that the plaintiff's expert is not qualified to render an opinion. Successfully challenging a particular expert's qualifications does not demonstrate that the plaintiff cannot prove an essential element of its case. It simply demonstrates that the plaintiff cannot establish an essential element of its case *with that expert*. Thus, rather than the litigation ending with the disqualification of the expert, it will continue while the plaintiff attempts to find yet another expert. Determining how many chances a plaintiff must be given to find a qualified expert before a case can be dismissed remains an open question.[29]

### III.

The Court's opinion in this case creates a safe harbor for two plaintiffs who, almost four years after they filed their complaint, are still unable to substantiate their claim that Alltel Publishing Company's ("Alltel") failure to include their listings in the local telephone book caused them $225,000 in damages. When Mr. Hannan was deposed over one year after filing the complaint, he stated that it was "impossible" to identify the records or documents that could quantify the losses he and his wife were claiming. He also testified that it was "impossible" to specify any business that the couple lost. Likewise, when Ms. Hannan was asked to quantify their losses, she stated, "I have absolutely no way of doing that. And neither does anyone else."

Damages are often not susceptible to exact computation, *Provident Life & Accident Ins. Co. v. Globe Indem. Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057, 1058 (1928), and must be left to the impartial judgment of the jury. *Goodall v. Thurman*, 38 Tenn. (1 Head) 209, 217–18 (1858); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn.Ct.App.1999). However, a plaintiff must nevertheless provide sufficient evidence to enable the trier of fact to make a fair and reasonable assessment of the damages. *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230 (Tenn.Ct. App.2006); *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 57 (Tenn.Ct.App.2004). While the evidence regarding damages need not be mathematically precise, *Brown v. Chesor*, 6 S.W.3d 479, 483 (Tenn.Ct.App.1999), it must prove both the existence and the amount of damages with reasonable certainty. *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 595 (Tenn.Ct.App.2001); *Overstreet v. Shoney's Inc.*, 4 S.W.3d at 703.

When damages are an essential element of a plaintiff's cause of action, a defendant may prevail on a motion for summary judgment by demonstrating that the plaintiff has failed to produce evidence of its damages. *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F.Supp.2d 183, 192 (D.Conn.2007); *Maier–Schule GMC, Inc. v. General Motors Corp.*, 154 F.R.D. 47, 56 (W.D.N.Y.1994); *Monroe v. Hyundai Motor Am., Inc.*, 270 Ga.App. 477, 606 S.E.2d 894, 897 (2004); *Rocci v.*

---

1996); *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 163 (Tenn.Ct.App.1984).

**29.** Over thirty years ago, we warned the bar about the perils of taking summary judgment motions too lightly. *Fowler v. Happy Goodman Family*, 575 S.W.2d at 498. Regrettably, this advice has not always been heeded. Even today, far too many lawyers find themselves unprepared when their adversary's summary judgment motion is heard. After

the summary judgment is granted against their client, these lawyers gather the evidence they should have presented at the summary judgment hearing and, invoking Tenn. R. Civ. P. 59, ask for a second opportunity to defend against the summary judgment motion. This Court granted them this procedural "do over" in *Stovall v. Clarke*, 113 S.W.3d 715, 724 (Tenn.2003).

*MacDonald–Cartier,* 323 N.J.Super. 18, 731 A.2d 1205, 1209 (1999). Accordingly, courts have granted motions for summary judgment in cases where the plaintiff offered no evidence of damages other than the allegations in its complaint, *Draft–Line Corp. v. Hon Co.,* 781 F.Supp. 841, 846 (D.P.R.1991), or where the president of the plaintiff corporation testified that the basis for the $4,000,000 damage claim was nothing more than his "feeling." *Zirin Labs. Int'l, Inc. v. Mead–Johnson & Co.,* 208 F.Supp. 633, 636 (E.D.Mich.1962).

However, the requirement that a plaintiff prove its damages does not necessarily place the burden on the plaintiff to produce detailed evidence of damages at the summary judgment stage because that sort of evidence goes to the amount of the plaintiff's damages, not to the plaintiff's right to recover. When faced with a motion for summary judgment challenging the adequacy of its evidence of damages, a plaintiff need only demonstrate that damages exist and that they are not entirely speculative. *Cormier v. Dist. of Columbia Water & Sewer Auth.,* 946 A.2d 340, 348 (D.C.2008); *see also Allard v. Arthur Andersen Co. (USA),* 924 F.Supp. 488, 491–92 (S.D.N.Y.1996); *Carswell Trucks, Inc. v. Int'l Harvester Co.,* 334 F.Supp. 1238, 1239 (S.D.N.Y.1971); *Petty v. Chrysler Corp.,* 343 Ill.App.3d 815, 278 Ill.Dec. 714, 799 N.E.2d 432, 439 (2003); *Carroll v. Phila. Hous. Auth.,* 168 Pa.Cmwlth. 275, 650 A.2d 1097, 1100 (1994); *AccuWeb, Inc. v. Foley & Lardner,* 308 Wis.2d 258, 746 N.W.2d 447, 453 n. 8 (2008).

While the existence of damages is an essential element of the Hannans' claim, so is evidence establishing the amount of these damages with reasonable certainty. Thus, the Court of Appeals did not go far enough when it decided to reverse the trial court solely because Alltel did not "prove" that the Hannans had not been damaged by the absence of the listings in the November 2003 telephone book. The court overlooked the fact that at trial, the Hannans would also be required to prove not only the existence but also the amount of their damages with reasonable certainty.

The Hannans and their lawyer regrettably did not give the courts much to go on. Even when the evidence is viewed in the light most favorable to the Hannans, it is difficult to reach any conclusion other than that the record does not contain enough evidence to enable a jury to do anything more than speculate about that amount of the Hannans' damages. There is simply no evidence establishing the amount of the Hannans' damages with reasonable certainty. Accordingly, I would hold that Alltel carried its burden of production with regard to its summary judgment motion and that the burden of production shifted to the Hannans to demonstrate that their claim for damages should be presented to a jury. I would also hold that, even though the Hannans had over fifteen months to marshal their evidence of damages, they failed to demonstrate both that they had been damaged and that awarding them damages would not be entirely speculative. Accordingly, the trial court properly granted Alltel's motion for summary judgment.